## LUSE v. UNITED STATES.

### No. 6933.

Circuit Court of Appeals, Ninth Circuit.
April 24, 1933.

Rehearing Denied June 2, 1933.

Donald Armstrong, of Los Angeles, Cal., for appellant.

John R. Layng, U. S. Atty., and Gwyn S. Redwine and Dorothy Lenroot Bromberg, Asst. U. S. Attys., all of Los Angeles, Cal.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

This case is before us for the second time, on a conviction for perjury in giving false testimony as a witness in a mail fraud case in which appellant was one of the defendants. In directing a reversal and a remand, the opinion, 49 F.(2d) 241, differentiated the first and the third counts. As to the latter it was stated that a verdict should have been directed for defendant; as to the former, the reversal was for errors in the admission of certain testimony. On the new trial, which was very properly confined to the first count, substantially the same evidence, except that which had been held to have been erroneously admitted, was again introduced. Defendant was again convicted.

The same objections as had been urged on the former appeal, both to the admission of the testimony given in the mail fraud case by certain witnesses and to the materiality of defendant's allegedly false testimony in that case in relation to the issues therein, were again made in the trial court and are again sought to be raised on this appeal. In view of the decision of this court and the reasons therefor as set forth in Judge Wilbur's opinion, the trial judge properly deemed himself precluded from considering these objections.

In the former opinion we impliedly held that the evidence of those other witnesses was properly received on the issue of materiality and willfulness of the falsity and that the entire testimony in the case, exclusive of that which we found to have been erroneously admitted, sufficed to justify submission of the first count to the jury. In stating that the evidence of those other witnesses, "it is rightfully claimed, was extremely prejudicial to defendant," the court did not say and did not mean that, in view of its prejudicial character, it was improperly received. What was intended was to emphasize that its prejudicial quality was of itself no reason for its exclusion; in a criminal case, practically all of the government's evidence is in its very nature and is intended to be prejudicial to a defendant. We find no occasion to add anything to the former opinion in this respect.

The vital question in the case was and is whether or not defendant's alleged false testimony was on a matter material to the issues in the mail fraud case. While by remanding for a new trial on the first count we impliedly held it to be material as against the same argument as is again made by appellant, we deem it proper to note our agreement with the argument now but not then presented by appellee. In the mail fraud case there was a conflict in the testimony between alleged victims and defendant; if the jury believed defendant's testimony that one Blaylock had been in fact a principal in transactions with these alleged victims and had not been merely used by defendant as a dummy, it might well have believed in defendant's good faith both in those and in the other deals. To strengthen his own statement that Blaylock had been such a real principal in the matters which, in part, constituted the alleged mail fraud, defendant on direct examination testified that Blaylock had *never* acted as a dummy for him *at any time*. After admitting on cross-examination that he had so testified on direct, he was asked apparently without objection and answered questions in respect to a deal made through him between Blaylock and one Yardley in 1930. As this was after the mail fraud indictment had been returned, the Yardley deal, of course, had no direct bearing on the issues then before the court. The evidence, however, was received in view of defendant's testimony on direct that he had *never* used Blaylock as a dummy. Doubtless to establish a self-contradiction, not as to any matter brought out for the first time on cross-examination but as to his statement on direct that he had *never* used Blaylock as a dummy, and thus to impeach his veracity, he was asked questions, the answers to which are charged as perjurious. Instead of admitting, however, that Blaylock had been a dummy in the Yardley deal, he gave the allegedly false and perjurious testimony that Blaylock personally in defendant's office in Los Angeles on a certain day had executed a transfer of the Yardley property. That testimony, if believed, would confirm his statement that he had never used Blaylock as a dummy and thus would tend to establish his credibility as a witness. In this respect it was material. See cases collected in 48 Corp. Jur., p. 836, note 44.

The evidence in the instant case is uncontradicted that Blaylock had not been out of Texas on and for several months before and after that date. The jury by its verdict found that defendant's testimony in this respect in the mail fraud case was willfully false; and for the reasons hereinabove stated we concur in the court's holding that it was on a matter material to the issues in that case.

**Affirmed.**