## UNITED STATES v. QUICK.

### No. 7868.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 4, 1942.

Decided June 5, 1942.

Walter G. Winne, of Hackensack, N. J. (Winne & Banta, of Hackensack, N. J., on the brief), for appellant.

Richard J. Hughes, Asst. U. S. Atty., of Trenton, N. J. (Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellee.

Before BIGGS, MARIS, and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Denton J. Quick, was convicted on the first count of an indictment which charged him and other defendants with a conspiracy to commit offenses against the United States through the possession of certain unregistered stills and carrying on the manufacture and removal of distilled spirits upon which no federal tax was paid. He was acquitted on the remaining six counts of the indictment, each of which respectively charged a separate substantive offense in fulfillment of the object of the alleged conspiracy.

Quick's participation in the conspiracy, as alleged by the government, lay in his agreeing to furnish "protection" to the owners and operators of certain illicit stills located on three farms in Sussex County, New Jersey (whereof he was the sheriff), for which service he was to receive $150 a week from the operators of the stills. Except for the testimony of one witness, the evidence offered against Quick was circumstantial and, in part, hearsay, which was competent as to him only on the basis of its being the utterances of alleged co-conspirators in furtherance of the conspiracy.

The witness who gave direct testimony for the government was one Simmons, a co-defendant, who had plead guilty. Simmons testified that he had arranged to have Quick provide "protection" to the still locations in consideration of the $150 weekly payments, and that he had made six or eight such payments to Quick. He further testified that Quick on his own initiative had warned him that a certain still location was "hot" and that operations there should cease; that on another occasion Quick, at the request of Simmons, had called the New Jersey state police for information as to the identity of an automobile seen cruising in the vicinity of a still location, whereby it was determined that it was the automobile of government agents; and further that Quick and Simmons had arranged for Quick to raid one of the stills and seize the equipment found, thus facilitating the repurchase of it by the still operators through one Greenstone, a junk man, at normal market prices.

Quick, as a witness in his own behalf, denied any part in the alleged conspiracy and further denied in toto Simmons' testimony except for the raid, which he (Quick) asserted was a bona fide act of law enforcement on his part, performed in conjunction with several New Jersey policemen and without any connivance with Simmons. Quick further offered independent proof that the disposition made of the seized still and equipment was in accordance with the practice approved by the Commissioner of the Alcoholic Beverage Commission of New Jersey, with whom he had personally discussed the matter of disposing of the particular material. The purchasing junk man, who was called as a witness for the government, testified that the purchase was a legitimate transaction and that the price he paid was about the market price for such goods. Quick having also denied his telephone call to the New Jersey state police, as testified to by Simmons, the government in rebuttal called as witnesses state police officers who identified the call from Quick at the time alleged. This served to refute Quick, who, upon being recalled to the stand, persisted in his lack of any recollection of the call but conceded that it had undoubtedly been made as confirmed by the police officers.

We have indicated in general the sources and extent of the direct testimony in the case, not for the purpose of appraising either its probity or weight, which, of course, was within the exclusive province of the jury, but in order to consider appropriately the import and materiality of the character evidence offered by Quick, the learned trial judge having refused to charge as requested by the defendant with respect to such evidence. The appellant assigns for error the trial court's refusal of a number of requests for charge, but we think it is unnecessary to consider any more than the ones which have to do with the court's refusal to charge as requested with respect to the scope and degree of importance of the character evidence.

In final analysis, the question of the appellant's guilt or innocence depended, as is apparent, upon the word of Simmons, a self-confessed accomplice, as against that of Quick, the indicted defendant. What corroboration of Simmons there was grew out of incidental circumstances related by other confessed accomplices. In behalf of the defendant, a number of responsible residents of the community in which he had lived all of his life testified that the defendant bore a good reputation as an honest and law-abiding citizen and for truth and veracity. It was in that situation that defendant's counsel requested the learned trial judge to charge, inter alia,

that—"It is the right of a person charged with crime to have all relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal." There was another request for charge to like effect, couched in slightly different language. The trial court refused both of these requests but did instruct the jury in its general charge that "You may consider the character witnesses, what the weight and effect of their testimony is to be, what you want to give it." That was the extent of the charge in such regard.

The question presented, therefore, is whether the charge of the learned trial judge with respect to the character evidence met substantially the legal requirements of the situation. If it did, then the refusal of the cognate requests for charge was not error. A court is under no duty to charge in the exact language of a request or in any particularly approved form. Young v. United States, 9 Cir., 119 F.2d 399, 403; Hart v. United States, 5 Cir., 112 F.2d 128, 132; Hancey v. United States, 10 Cir., 108 F.2d 835, 837; Le More v. United States, 5 Cir., 253 F. 887, 894. And, while a trial judge is not required, of his own motion, to charge with respect to character evidence, a request to that end is the legally appropriate and efficient means for inducing pertinent instructions by the court. Kinard v. United States, 68 App.D.C. 250, 96 F.2d 522, 524. The right so to request within proper bounds is a defendant's privilege for the purpose of insuring that the jury be not left to grope with respect to the place and purpose in the case of relevant and material evidence. When so requested, the court is obliged to instruct the jury consonantly, if not in the form of the request, then in the language of the court. The words necessary to impart a germane instruction are for the trial court's choice so long as they are adequate for the purpose. In the matter of character evidence the jury should at least be told generally of its nature, the manner in which it should be received and considered and the weight that the jury may give to it. Cohen v. United States, 3 Cir., 282 F. 871, 872, 873.

What the court below told the jury with respect to the weight and effect of the character evidence being for their appraisal was correct so far as it went. But what the court neglected to tell the jury was that they should consider the character evidence along with all of the other evidence in the case and that, when all of the evidence had been considered, if a reasonable doubt as to the defendant's guilt then existed, it was their duty to acquit. All the court told the jury, however, in that connection was that "You may consider the character witnesses," obviously leaving it to the option of the jury whether they would consider the character evidence at all. The instruction that the weight and effect to be given to the character evidence was for the jury's determination was thus only conditionally pertinent, depending upon whether the jury elected to consider the character witnesses as the court told them they might do. This tended to discount the status of the character evidence as matter to be considered by the jury along with all of the other facts and circumstances in the case. The situation is somewhat analogous to that shown in Edgington v. United States, 164 U.S. 361, 366, 17 S.Ct. 72, 73, 41 L.Ed. 467, where the trial court left the character evidence with the jury on the conditional basis that, if all of the other evidence in the case (excluding character evidence) created a doubt as to the defendant's guilt, then the jury might consider the character evidence. In reversing, the Supreme Court said that: "Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although, without it, the other evidence would be convincing."

In Sunderland v. United States, 8 Cir., 19 F.2d 202, 215, it was held that although a defendant may not require a charge with respect to character evidence in the exact words of the Edgington case, he is entitled to a charge which comports with the rule of that case by instructions which set forth (1) the purpose and function of character evidence, i. e. to generate a reasonable doubt; (2)

the probative status of such evidence, i. e. that it be considered by the jury regardless of whether the other evidence in the case is clear or doubtful, and (3) the possible effect of character evidence, i. e. that, when considered along with the other evidence in the case, if a reasonable doubt exists as to the defendant's guilt, he is entitled to an acquittal. In Snitkin v. United States, 7 Cir., 265 F. 489, 492, the need for furnishing a jury with the "legal scales in which to weigh it [character evidence]" was recognized.

 Of course mere proof of good character does not entitle a defendant to a verdict of acquittal. Singer v. United States, 3 Cir., 278 F. 415, 419. But it is equally true that evidence of good character, when considered along with all of the other evidence in the case, may be the factor which creates the reasonable doubt which entitles a defendant to an acquittal by the jury. Edgington v. United States, supra. The very object of introducing character evidence is to raise in the minds of the jury a reasonable doubt as to the defendant's guilt. Rowe v. United States, 8 Cir., 97 F. 779, 781.

The rule in this circuit is in keeping with the decisions already considered. In Cohen v. United States, supra, 282 F. at page 873, this court held that the trial judge "should have instructed the jury in substance that reputation of the defendant's good character, when put in evidence, is a fact which they should consider with the other facts in the case, and further that reputation for good character is a fact which, when considered in connection with all the other evidence in the case, may, like other facts, generate a reasonable doubt." These requirements, when instructions with respect to character evidence are requested, have not been impaired by decisions in cases where trial courts have been sustained for refusing to approve requests which overemphasize or unduly accentuate the role and efficacy of character evidence in creating a reasonable doubt. See Kaufmann v. United States, 3 Cir., 282 F. 776, 784, 785; Pomerantz v. United States, 3 Cir., 51 F.2d 911, 913. A failure to find reversible error in a trial court's refusal to affirm a too liberal request for charge does not justify noncompliance with the requirements of the rule for an adequate charge.

 It will be found upon reference to the cases cited in support of the charge in the instant case that they represent instances of proper refusal of requests because the requests sought to over-emphasize an independent capacity in character evidence to create the reasonable doubt which requires acquittal. For example, in Baugh v. United States, 9 Cir., 27 F.2d 257, 261, the Court of Appeals said that the refused request that character evidence "may *alone* create a reasonable doubt, although without it the other evidence would convince you of his guilt" (emphasis supplied) would have given undue prominence to only a part of the evidence in the case. Moreover, it must be noted that in the Baugh case the trial judge had actually instructed the jury that character evidence "is a circumstance in their [defendants'] favor which you will consider, together with all the facts and circumstances in evidence. It is competent testimony, and you should take it and consider it and give it such weight as appeals to your judgment." As the Court of Appeals aptly said, "More was not required." The charge itself being adequate, the refusal of the request became legally unimportant. See also in the same connection Capriola v. United States, 7 Cir., 61 F.2d 5, 12; Haffa v. United States, 7 Cir., 36 F.2d 1, 5; Grace v. United States, 5 Cir., 4 F.2d 658, 662. In each of the cited cases the jury was specifically told that they should consider the character evidence along with all of the other evidence in the case. Such, however, was not done in the present instance. We think that the learned trial court's failure to so instruct the jury was error, particularly in view of the defendant's express request which had pointed out the essential elements for charge with respect to character evidence.

 It is especially appropriate that the jury be adequately instructed with respect to character evidence where, as here, the evidence against the defendant consists entirely of testimony of self-confessed accomplices. See Egan v. United States, 52 App.D.C. 384, 287 F. 958, 968, 969, and Jones v. United States, 53 App.D.C. 138, 289 F. 536, 539. In Nanfito v. United States, 8 Cir., 20 F.2d 376, 379, the court said that "It should be observed that in a case in which the government relies chiefly for its prosecution upon the evidence of admitted accomplices, * * * it is important that the jury be specifically instructed as to the proper consideration to be given evidence of good character."

In Perara v. United States, 8 Cir., 235 F. 515, 517, from which the government's brief quotes extensively, the trial judge correctly charged with respect to the character evidence but then went on to admonish the jury to receive such evidence with caution and to remember that certain crimes can be committed, because of their particular nature, only by men of good character. The Court of Appeals held the warning to constitute prejudicial error. In that situation it can hardly be that the court's further remark that a brief charge without elaboration is preferable meant more than that the correct rule should be briefly stated. Kreiner v. United States, 2 Cir., 11 F.2d 722, 731, is not in point. That case arose in the Southern District of New York where there is a rule of court which provides that requests for charge shall be made a specified time in advance of the charge. The refused request in that case was not made within the required time. All that the case holds is that it was not error for a trial judge to refuse a request which was not presented within the time limited by the rule of court.

In justification of the charge in this case with respect to the character evidence (see United States v. Dewinsky et al., D. C., 41 F.Supp. 149, 152, 153) the learned court below relied principally on the decisions in Nash v. United States, 2 Cir., 54 F.2d 1006, 1007, and United States v. Kelley, 2 Cir., 105 F.2d 912, 918. But in the Nash case [54 F.2d 1007] the jury were told that they "should consider it [character evidence] along with the rest [of the testimony]." They were not so instructed in the instant case. In the Kelley case the trial judge neglected, although requested, to charge with respect to the character evidence. If that case means, as it seems to hold, that a court is under no duty to charge at all with respect to character evidence, even when requested, the decision is not in keeping with the rule in this circuit (Cohen v. United States, supra), which we think fully comports with the decision in the Edgington case, supra. See Gold v. United States, 3 Cir., 102 F.2d 350, 352. Moreover, in the Kelley case the government's evidence did not consist entirely of the testimony of self-confessed accomplices where, as we have seen, the duty to charge with respect to character evidence is especially indicated. Cf. Egan v. United States, supra; Jones v. United States, supra; and Nanfito v. United States, supra.

As the case must go back for retrial, we think it advisable to treat with the admission of certain evidence at the former trial, whereof the appellant complains. The government offered in evidence a book (Exhibit G-19) which contained memoranda of disbursements made during and in connection with the operation of the stills. The entries in the book had been made by one Dewinsky, a co-owner of the stills and a co-defendant who had plead guilty. The learned trial judge admitted the book in evidence in reliance upon the Act of 1936, c. 640, § 1, 49 Stat. 1561, 28 U.S.C.A. § 695, which renders admissible as evidence in any court of the United States "* * * any writing or record * * * in a book or otherwise * * * of any act, transaction, occurrence, or event, * * * if * * * made in the regular course of any business * * * 'business' [including] business, profession, occupation, and calling of every kind." We agree that, so far as competency is concerned, the statute rendered the book admissible as evidence. The Act does not discriminate between lawful and unlawful businesses. The prerequisites to admissibility are that the entries shall have been made in the usual course of business as the record of acts or transactions then occurring.

Once admitted, the book became the witness of anything which it contained that was relevant or material to the issues. The particular items, however, which the government proffered were so cryptic as to be wholly unintelligible of themselves. For the purpose of giving meaning to these otherwise meaningless book entries, the government called two witnesses, Kanter and Novick, self-admitted promoters and co-owners of the stills, and, as such, alleged co-conspirators, although they had not been indicted. Kanter and Novick, who had never met or talked to Quick and had nothing to do with making the book entries, testified that certain of the entries indicated payments by Dewinsky to Quick or to Simmons for Quick for "protection". Their testimony in such regard was not by way of interpretation from any first-hand knowledge of their own but represented their conclusions drawn from what they said Dewinsky, who kept the book, had told them. Dewinsky, who at the time of the trial was serving a term in a federal penitentiary, was called as a witness by the court, neither side being willing apparently

to vouch for him. He denied that the book entries meant what Novick's and, particularly, Kanter's testimony had imputed and that he had ever told Kanter or Novick that the entries represented payments made to or for Quick. In that situation, it is readily apparent that the most accomplished by Kanter's and Novick's testimony concerning the book was to lay the basis for an issue of credibility between them and Dewinsky. Not possibly could their testimony concerning the book constitute substantive proof of what the items in the book meant. The statute was intended to render admissible in evidence books and records, made in the usual course of business, without further authentication, but it was not intended to make book entries the touchstone by which incompetent oral testimony would become competent. Kanter's and Novick's hearsay testimony with respect to the book entries should, therefore, have been excluded.

The judgment of the District Court is reversed and a new trial ordered.