UNITED STATES of America

v.

Patrick J. LOGAN, Michael Graner.

Appeal of Michael GRANER.

No. 82–5509.

United States Court of Appeals,
Third Circuit.

Argued March 15, 1983.
Decided Sept. 12, 1983.

Charles F. Scarlata (argued), Scarlata & DeRiso, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty. (argued), Pittsburgh, Pa., for appellee.

Before ADAMS, GARTH and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This appeal from a judgment of conviction for conspiracy under 18 U.S.C. § 1951 challenges the district court's refusal to instruct the jury that a reasonable doubt as to the defendant's guilt may be raised if the jury believes one of his character witnesses.[1] We hold that the district court properly refused to give this instruction as stated by the defendant but that, under the cir-

cumstances presented by this record, the district court committed plain error by failing to provide the jurors with any guidance or directions for the proper consideration of character evidence during their deliberations. Accordingly, we will reverse and remand for a new trial.

### I.

■ A jury convicted the defendant-appellant Graner (herein defendant) of one count of conspiracy under the Hobbs Act, 18 U.S.C. § 1951.[2] At trial the Government presented, as the chief prosecution witness, the defendant's indicted co-conspirator, Patrick Logan, who had entered into a plea agreement with the Government prior to trial. According to Logan, he and the defendant, both of whom worked as assessors for the Board of Property Assessments in Allegheny County, Pennsylvania, conspired to reduce a proposed increase in the assessed value of a property known as the Hob Nob Lounge in return for a payment to them.

The Government also called Charles Blocksidge, the director of the Board, who described its purpose and internal organization. The Board values all real property within the county for property tax purposes. For administrative convenience, Blocksidge explained, the Board divides the county into twelve sectors, each of which has a supervisor responsible for five or six assessors and approximately 40,000–45,000 parcels of land. When an assessor revalues

---

1. Contrary to the assertions in footnote 1 of the dissent, the defendant argued in his brief to this court that the district court "erred in refusing to give the requested standard character charge" and that the district court's "refusal to give such a charge ... constitute[d] reversible error." Br. at 7. Counsel's inexact use of the word "reversible" in his brief should not foreclose consideration of the issue presented under the facts in this record. Therefore, the assertion in the dissenting opinion that the defendant never urged this ground for reversal and that the parties did not brief this issue on appeal seems inaccurate and misleading. See also n. 10.

2. This statute provides that

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

The Government must prove interference with interstate commerce and extortion. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). *See also United States v. Culbert,* 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978).

a property, usually to reflect a change or improvement, he issues a "change order" which his supervisor signs and forwards to the main office for processing and approval.

The Government then called Thomas Sullivan, who owned property within Logan's district. Sullivan testified that on a previous occasion he had paid Logan to reduce an increase in a property assessment for his building. When Sullivan suggested similar treatment for the Hob Nob Lounge, located within the defendant's district, Logan agreed to make the necessary arrangements. Sullivan, however, never dealt with, talked to or met the defendant and at trial could not identify him. Sullivan's entire knowledge of the defendant's alleged participation in the scheme emanated from Logan.

Four FBI agents who had participated in the investigation which culminated in the indictment against the defendant also testified for the Government. Agents Kraus and Smith explained they had participated in a surveillance of a meeting between Logan and the defendant on October 21, 1981.[3] Agents Powers and Wolf stated they had interviewed the defendant on April 20,

1982, and that during the interview the defendant said that he and Logan had met for the specific purpose of transferring the defendant's share of the money in the envelope to him.[4]

Indisputably, the Government's most inculpatory evidence was the testimony of Patrick Logan, who testified that he had telephoned the defendant in September of 1981 to inform him of the possibility of making some money on the reassessment of the Hob Nob Lounge, which had been undergoing renovations following a fire. According to Logan, he and the defendant agreed to reduce the increase in assessed value from $12,000. to $5,000., which netted savings to the property owner of $700.00. Logan claimed that he received $400.00 of this amount and that he gave the defendant $150.00 on October 21.

On cross-examination, Logan admitted that he had been taking similar kickbacks for approximately ten years prior to this incident. He further admitted that he had lied to FBI agents when he told them that he had never heard of any assessors taking kickbacks and that he did not believe it possible for an assessor to do so.[5] In addi-

---

**3.** Agent Kraus followed the defendant from the airport to the rendezvous point and then back to the airport. Agent Smith followed Logan from Sullivan's office.

**4.** Defendant, disputing this characterization of his remarks, stated:

"A. ... [Logan] just said he wanted to see me there again, would I please meet him at 9:30 at Mr. Hoagie.

"Q. Did you?

"A. Yes, sir.

"Q. Will you describe what happened at that time?

"A. I went to Mr. Hoagie parking lot, parked my car, got into Mr. Logan's car, and we had some small talk, how are you doing, how is work, things of that nature.

Mr. Logan handed me an envelope and said here, put this in your pocket. I took the envelope, put it in my pocket, talked for a minute or so, and I left.

"Q. Did you know what was in the envelope at that time?

"A. No, sir.

"Q. Did you subsequently determine what was in the envelope?

"A. When I got back to West Mifflin later on I opened it up and found it was $150.

"Q. $150?

"A. Yes.

"Q. And what did you do?

"A. I was sort of embarrassed, but I didn't know what to do.

"Q. Why were you embarrassed?

"A. I didn't do anything to deserve $150.

"Q. But you kept the money?

"A. Yes, sir. In retrospect I should have given it back, but I didn't.

"Q. Did you have any idea prior to opening that envelope that you would be compensated for the work you did at the Hob Nob Lounge?

"A. No, sir.

"Q. There had been no previous discussion between you and Mr. Logan?

"A. No, sir."

(N.T. 149–51).

The Government also called Mariana Falce, the owner of the Hob Nob Lounge, whose testimony related solely to her cooperation with, but not participation in, the investigation.

**5.** As part of the plea agreement, the Government dismissed another indictment against him which had charged him with numerous other violations of the Hobbs Act. Logan stated during cross examination:

tion, Logan acknowledged that he had been reprimanded by the Board in May of 1980 for his exercise of "poor judgment and negligence" in the submission of information and recommendations for reductions in property assessments.

In sum, the only witness whose testimony critically linked the defendant to the alleged scheme was Logan, on whose credibility the entire Government case hinged.

The defense consisted of the defendant's own testimony and seven character witnesses.[6] The defendant testified that Logan asked him to assess the Hob Nob Lounge at a low value as a "favor" for a friend and that they did not discuss a pecuniary reward for the defendant in exchange. On September 24, 1981, the defendant and his supervisor inspected the premises and thereafter defendant computed the assessment by comparing it to another bar in the vicinity.[7] Later Logan called and arranged a meeting between them at a parking lot, where Logan handed him an envelope,

> "Q. So on the 20th you told the agents you gave Mr. Graner $300, and on the 21st you weren't sure how much you gave him, or were aware of the details of the change in the assessment?
> "A. Yes, sir.
> "Q. How long has it been since you pleaded guilty?
> "A. It was, I think, I think it was the 11th. I think it was the 11th. I think.
> "Q. And today, approximately ten days after you pleaded guilty in exchange for which the government agreed to dismiss four counts of violation of the Hobbs Act, you say that you gave Mr. Graner $200 and that Mr. Graner did know all about the pre-arrangements for this fixing of the assessment?
> "A. Yes, sir.
>
> \*　\*　\*　\*　\*　\*
>
> "Q. What effect do you believe your testimony against Mr. Graner will have on your sentencing with respect to the guilty plea?
> "A. I don't know."
> (N.T. 86–88).

6. The defendant also called his supervisor, Allen Fyock, whose testimony the district court restricted to recounting what transpired when he and the defendant physically inspected the Hob Nob Lounge.

7. The defendant described his calculations this way:

which the defendant later discovered contained $150.00.

The defendant's version of the transaction relating to the Hob Nob Lounge directly contradicted Logan's testimony, thus pitting the defendant's credibility squarely against Logan's. To buttress his own credibility, the defendant called seven character witnesses who testified that the defendant had a reputation in the community for honesty and truthfulness.[8]

## II.

Character evidence is a unique kind of admissible circumstantial evidence. Although the accused's character usually is not the ultimate issue, lay witnesses are permitted to express opinions, based entirely on hearsay, that the defendant has a reputation in the community for truthfulness. The prosecution may not, during its case-in-chief, introduce evidence of the defendant's bad character or criminal predisposition. However, the defendant himself may elect to place his character at issue,

> "Q. Now, it sounds like you had some pre-conceived notion that you wanted that assessment to be $6100 when you just worked back from that.
> "A. Well, I made that comparison with the Melting Pot [the other bar], which was sixty-four, and made a comparison there, and putting the building in for approximately $5 a square foot, comes to $6000 or $6,100.
> "Q. Was the Melting Pot assessed at approximately $5 per square foot?
> "A. In my work book it was.
> "Q. And what was the amount of the increase that you wanted to put on the building?
> "A. The amount I wanted to put on the building should have been $6100.
> I made an error by bringing 4450 over here. It should have been added to the 1650 to make a total of sixty-one.
> I raised the land from 450 to a thousand for a total increase of 550.
> So 550 and 4450 comes to approximately a $5000 increase. I transposed the wrong figures over there.
> "Q. Was that strictly an error?
> "A. Yes."
> (N.T. 143–44).

8. These witnesses stated that defendant was "honorable beyond question," "indisputabl[y] a fine gentleman and very trustworthy," "outstanding" and "beyond reproach" with an "unsullied reputation [for] honesty" (N.T. 181–90).

and the opinion testimony which he introduces into the trial constitutes substantive evidence which, under certain circumstances, can raise a reasonable doubt as to his guilt, even though it does not relate to the specific criminal act of which he is accused.

By introducing evidence of his good character, the defendant "throw[s] open the entire subject" of his character and, consequently, allows the prosecutor to penetrate a previously proscribed preserve, to produce contradictory evidence, to cross-examine the defendant's character witnesses and to probe the extent and source of their opinions. *Michelson v. United States,* 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). In other words, the defendant makes himself "vulnerable where the law otherwise shields him." *Id. See also* Fed. R.Evid. 404, 608(a) and 803(21).

■ Given the unique nature of character evidence,[9] the importance of appropriate instructions to provide jurors with adequate guidance for consideration of this testimony cannot be underestimated. In *Edgington v. United States,* 164 U.S. 361, 366, 17 S.Ct. 72, 73, 41 L.Ed. 467 (1896), the Supreme Court ruled that the jury should be instructed that character evidence,

"... when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

*See also Michelson v. United States,* 335 U.S. at 476, 69 S.Ct. at 218 ("[t]his privilege ... in some circumstances, may be enough to raise a reasonable doubt of guilt and ... in federal courts a jury in a proper case should be so instructed").

This court has recognized the necessity of appropriate jury instructions relating to character evidence. In *United States v. Frischling,* 160 F.2d 370 (3d Cir.1947), the defendant requested the following charge:

" 'Good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt sufficient to justify you in acquitting the defendant.' "

The trial judge, declining to honor this request, charged the jury that

" '... according to the stipulation in this case, the character of the defendant has been put into evidence and the Court charges you that good character is to be considered just as any other fact in the case and is to be weighed and considered as any other evidence, and to give it such weight as the jury should deem it entitled to under all the evidence in the case.' "

This court reversed and remanded with instructions for a new trial. Although the trial judge had directed the jury to consider the character evidence,

"... he failed, although specifically requested to do so, to give them any guidance as to what part that fact could play in their consideration of the defendant's guilt. In this we think he erred. A jury who were not told that the defendant's reputation for good character when considered in the light of the other evidence might be permitted to raise the sort of doubt in their minds which would justify acquittal, might well regard evidence of such reputation as wholly irrelevant to the specific issue of guilt committed to them and consequently give it no consideration whatever. We accordingly cannot say that the failure of the trial judge to give the requested instruction did not substantially prejudice the defendant."

*Id.* at 370–71.

One year later in *United States v. Klass,* 166 F.2d 373, 378 (3d Cir.1948) (in banc), this court reviewed a charge which stated:

---

**9.** The Supreme Court has acknowledged that these rules are

"... archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court. To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice."

*Michelson v. United States,* 335 U.S. at 486, 69 S.Ct. at 223.

" 'Some of the defendants have produced what are known as reputation witnesses. The evidence which they gave is valid evidence and must be considered by you with all of the other evidence and may of itself be the basis for a reasonable doubt. But it must not be considered separate and apart from all the other evidence, *nor should reputation evidence alone bear with you against overwhelming evidence indicative of guilt.*

"It must be considered with all of the other evidence and weighed with that.' "

(Emphasis in original.)

The court, considering these instructions confusing and prejudicial, held that a charge on character evidence should include the purpose, probative status and possible effect of such evidence. That is, the district court should have explained to the jury that the defendant introduced character evidence to generate a reasonable doubt, that the jury should consider the character evidence without regard to the strength or weakness of the other evidence, and that, if the character evidence raised a reasonable doubt as to the defendant's guilt, the jury should return a verdict of not guilty. *Id.* at 379–80. The court concluded:

"A charge on reputation evidence must meet the requirements thus set forth and the defendant who adduces such evidence is entitled to have it considered, if believed, along with all the other evidence in the case until the jury is convinced of his guilt beyond a reasonable doubt, no matter how convincing the other evidence may appear to be. That, we assume, is the purport of the statement in the *Edgington* case ' * * * although, without it, the other evidence would be convincing.' It logically follows that if all the evidence, including the reputation evidence, convinces the jury beyond a reasonable doubt of the defendant's guilt, the inquiry is at an end."

*Id.* at 380.

Both *Frischling* and *Klass* relied upon *United States v. Quick,* 128 F.2d 832 (3d Cir.1942), a factually similar case in which a jury convicted the defendant, a policeman,

of conspiracy. The testimony of a co-defendant who had pled guilty provided the only direct evidence of the defendant's guilt. The co-defendant stated that he arranged to have the defendant provide protection to operators of several illegal stills in return for weekly payments of $150.00. On one occasion, he and the defendant had arranged for the defendant to raid one of the stills, to seize certain equipment and then to re-sell the confiscated goods at normal market price.

The defendant denied any participation in the conspiracy and asserted that he performed the raid as a bona fide act of law enforcement. He called a number of community residents to attest to his reputation for truth and veracity. The defendant requested the court to charge the jury that

" . . . 'It is the right of a person charged with crime to have all relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal.' "

The trial judge refused this request and instead told the jury that " 'You may consider the character witnesses, what the weight and effect of their testimony is to be, what you want to give it.' " *Id.* at 835. This court reversed with the following observations:

"When so requested, the court is obliged to instruct the jury consonantly, if not in the form of the request, then in the language of the court. The words necessary to impart a germane instruction are for the trial court's choice so long as they are adequate for the purpose. In the matter of character evidence the jury should at least be told generally of its nature, the manner in which it should be received and considered and the weight that the jury may give to it. . . .

"[T]he court neglected to tell the jury . . . that they should consider the character evidence along with all of the other evidence in the case and that, when all of

the evidence had been considered, if a reasonable doubt as to the defendant's guilt then existed, it was their duty to acquit. . . .

\* \* \* \* \* \*

"In final analysis, the question of the appellant's guilt or innocence depended, as is apparent, upon the word of Simmons, a self-confessed accomplice, as against that of Quick, the indicted defendant. . . .

\* \* \* \* \* \*

"It is especially appropriate that the jury be adequately instructed with respect to character evidence where, as here, the evidence against the defendant consists entirely of testimony of self-confessed accomplices. . . . In *Nanfito v. United States,* 8 Cir., 20 F.2d 376, 379, the court said that 'It should be observed that in a case in which the government relies chiefly for its prosecution upon the evidence of admitted accomplices, \* \* \* it is important that the jury be specifically

instructed as to the proper consideration to be given evidence of good character.' " *Id.* at 834–36 (citations omitted).

Similarly, in the case at bar, a jury convicted the defendant, a municipal government employee, of conspiracy. The testimony of his co-defendant provided the evidence which connected the defendant to the alleged conspiracy. The defendant denied that he had participated in such a scheme and asserted that he had calculated the assessment for the Hob Nob Lounge properly. The defendant also relied upon testimony from character witnesses. The defendant requested the district court to instruct the jury that "if the jury believes one character witness on behalf of the defendant[,] that is sufficient to acquit the defendant." The district court properly refused to include in the charge this statement, which was not a correct formulation of the "standing alone" charge.[10] In jurisdictions approving a "standing alone" charge, the court instructs the jury that evidence of the defendant's good character alone may create a reasonable doubt whether the Government proved that the defendant had committed the crime.[11]

---

**10.** Counsel specifically requested a charge on character evidence at trial. He stated:

"Your Honor, I neglected to ask for one point in the charge. I thought it would be covered. I want to ask for it with respect to the character witnesses who were just presented that if the jury believes one character witness on behalf of the defendant that is sufficient to acquit the defendant."

(N.T. 195). The district court responded:

"THE COURT: That request is denied. I don't get into details about the evidence or any particular witness.

"I charge them on the credibility of witnesses and what is necessary for the government to prove in order to convict the defendant.

"I would not charge that if they believe one of the character witnesses that that is enough, because I do fully charge them on the weighing of the evidence and credibility of witnesses, and I think I cover that fully in the charge, but not a specific charge that you ask for. That is denied."

(N.T. 195).

The fact that the defendant requested a character evidence instruction, albeit incorrectly worded, thus distinguishes this case from situations where the defendant failed to ask for any such instruction whatsoever. *See, for example, United States v. Stirone,* 311 F.2d 277 (3d

Cir.1962), *cert. denied,* 372 U.S. 935, 83 S.Ct. 881, 9 L.Ed.2d 766 (1963) (The court did not err in failing to give an instruction relating to the defendant's alibi in the absence of a request), and compare with *United States v. Quick,* 128 F.2d at 835 ("A trial judge is not required, of his own motion, to charge with respect to character evidence[. A] request to that end is the legally appropriate and efficient means for inducing pertinent instruction by the court.").

**11.** Mere proof of good character does not entitle a defendant to a verdict of not guilty. *United States v. Quick, supra.* In *Cohen v. United States,* 282 F. 871, 875 (3d Cir.1922), the court phrased the proper charge as

". . . reputation of the defendant's good character, when put in evidence, is a fact which they should consider with the other facts in the case, and further that reputation for good character is a fact which, when considered in connection with all the other evidence in the case, may, like other facts, generate a reasonable doubt."

*But compare United States v. Baysek,* 212 F.2d 446, 448 (3d Cir.1954) (The jury should "consider the character evidence with the other evidence in the case and . . . acquit the defendant if the character evidence, either alone or considered with the other evidence, raised a reasonable doubt of his guilt"), *with Kaufmann*

■ Here, when the district court addressed the jury, it omitted any mention of character evidence or how such testimony should be considered.[12] Usually this kind of alleged defect in the trial proceedings would require consideration, on appeal, of whether the district court erred as a matter of law. However, the defendant placed no exceptions to the charge on the record. By failing to object specifically to this omission in the charge, the defendant did not preserve the issue for appeal unless the district court's action constituted plain error or affected substantial rights. *United States v.*

*Palmeri,* 630 F.2d 192 (3d Cir.1980), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981). *See also* Fed.R.Crim.P. 30 and 52(b).[13]

Whether a district court's failure to charge the jury on character evidence, as required by *Frischling, Klass* and *Quick,* constitutes plain error under Rule 52(b) depends upon the facts and circumstances. In *Darland v. United States,* 626 F.2d 1235 (5th Cir.1980), for example, the district court disallowed character evidence and refused a requested, related jury instruction. The court of appeals, reversing, held that

*v. United States,* 282 F. 776, 785 (3d Cir.1922) ("[T]he defendant was not entitled to have the judge charge that his good reputation, standing alone, of itself, without regard to the other evidence or circumstances in the case, was sufficient to create reasonable doubt").

The courts of appeals which have considered the appropriateness of the "standing alone" charge have reached differing conclusions. *Cf. United States v. Winter,* 663 F.2d 1120 (1st Cir.1981) (instruction that character evidence may of itself create reasonable doubt not required); *United States v. Cramer,* 447 F.2d 210 (2d Cir.), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 680, 30 L.Ed.2d 674 (1971) (under certain circumstances defendants entitled to instruction that character evidence may alone create reasonable doubt); *United States v. Hewitt,* 634 F.2d 277 (5th Cir.1981) (in some circumstances jury must be instructed that character evidence may of itself create reasonable doubt); *United States v. Donnelly,* 179 F.2d 227 (7th Cir.1950) (error to refuse instruction to effect that character evidence may of itself create reasonable doubt); *Gross v. United States,* 394 F.2d 216 (8th Cir.), *cert. denied,* 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1968) (in some circumstances jury must be instructed that character evidence alone may be sufficient to raise reasonable doubt); *Smith v. United States,* 305 F.2d 197 (9th Cir.), *cert. denied,* 371 U.S. 890, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962) (absent special circumstances, proper to refuse to instruct that character evidence alone may suffice to create reasonable doubt); *United States v. McMurray,* 656 F.2d 540 (10th Cir.1980), *rev'd on other grounds,* 680 F.2d 697 (10th Cir.1981) (in banc) (in some circumstances jury must be instructed that character evidence standing alone may create reasonable doubt, but not necessary if defendant relies upon other noncharacter evidence); and *United States v. Lewis,* 482 F.2d 632 (D.C.Cir.1973) (defendant entitled to instruction that character evidence may of itself generate reasonable doubt).

**12.** *See United States v. Quick,* 128 F.2d at 836 ("A failure to find reversible error in a trial

court's refusal to affirm a too liberal request for charge does not justify non-compliance with the requirements of the rule for an adequate charge.").

*See also United States v. Faudman,* 640 F.2d 20 (6th Cir.1981) (presentation of point for charge sufficiently preserved issue for appeal, notwithstanding failure to object to charge), and *compare with United States v. English,* 409 F.2d 200, 201 (3d Cir.1969) (objection to charge sufficiently preserved issue for appeal, notwithstanding failure to submit a request therefor).

**13.** Although Rule 30 requires objections to be voiced prior to the time the jury commences deliberation, Rule 52 allows review on appeal under the plain error standard. *United States v. Gallagher,* 576 F.2d 1028 (3d Cir.1978), *cert. dismissed,* 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 675 (1980).

Rule 30 has the "manifest purpose of ... avoid[ing] whenever possible the necessity of a time-consuming new trial by providing the trial judge with an opportunity to correct any mistakes in the charge" before the jury begins to deliberate. *United States v. Provenzano,* 334 F.2d 678 (3d Cir.1964), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1965).

*See also United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982):

"Rule 52(b) was intended to afford a means for the prompt redress of miscarriages of justice. By its terms, recourse may be had to the Rule only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it. The Rule thus reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed."
[Footnote omitted.]

" . . . where the character evidence offered affects a trait relevant to the crime charged, to deny introduction of such evidence and to refuse an appropriate charge to the jury constitutes both plain error and an error affecting substantial rights."

*Id.* at 1237. In *United States v. Previte,* 648 F.2d 73 (1st Cir.1981), the court concluded that the trial judge did not commit plain error by failing to charge the jury on character evidence. Although the defendant had submitted two points for charge, he "could hardly be said to have emphasized such testimony during trial." He called only one character witness and made "slight reference" to the point during closing arguments. *Id.* at 83.

■ In the case at bar, the defendant alerted the district court to the issue of character evidence throughout the trial and made clear to the district court that he wished a charge on the legal effect of character evidence,[14] even though his request was incorrectly worded. The chief Government witness claimed that the defendant had extorted money from a property owner. The defendant denied this assertion and attacked Logan's credibility with specific instances of Logan's dishonesty. Importantly, to shore up his own credibility and to cast a reasonable doubt upon whether the Government had proved his guilt, the defendant relied heavily upon his reputation in the community for truthfulness. This testimony resulted in the almost certain conclusion that either Logan or the defendant had not told the truth on the witness stand. Under these narrow circumstances, the failure to provide any guidance to the jury on character evidence constitutes plain error. As the Supreme Court stated in *Edgington v. United States,* 164 U.S. at 366–67, 17 S.Ct. at 73, *quoting Jupitz v. The People,* 34 Ill. 516, 521–22 (1864),

" ' . . . We can hardly imagine a case where evidence of a good character was a more important element of defence than

this . . . . Proof of uniform good character should raise a doubt of guilty knowledge, and the prisoner would be entitled to the benefit of that doubt. Proof of this kind may sometimes be the only mode by which an innocent man can repel the presumption of guilt arising from the possession of stolen goods. It is not proof of innocence, although it may be sufficient to raise a doubt of guilt. . . . If the court had told the jury that his good character should be taken into consideration by them, and was entitled to much weight, a reasonable doubt of the prisoner's guilt might have been raised which would have resulted in his acquittal.' "

While we agree with Judge Garth that ordinarily it is not good practice to reverse a trial court when the defendant failed to object to an erroneous charge, we are convinced that where, as here, the defendant requested a character evidence instruction which is central to the case, a narrow exception to the usual practice is justified. We emphasize that two factors combine to persuade us here that the omission of any instruction whatever on character evidence rises to the level of plain error: first, the defendant gave notice to the judge by requesting a charge on character evidence; and second, the defense case turned entirely on the defendant's credibility because the critical inculpatory evidence came from an alleged accomplice who directly contradicted the defendant's testimony. Our holding today is limited to this particular combination of factors.

■ We recommend to the district courts the charge on character evidence suggested in Devitt & Blackmar, *Federal Jury Practice and Instructions* § 15.25 (3d ed. 1977), which provides that

"Where a defendant has offered evidence of good general reputation for truth and veracity, or honesty and integrity, or as a law-abiding citizen, the jury

---

**14.** This situation seems far different from that before the Court in *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1962), relied on by the dissent. In that case no request for instructions or other curative devices "were ever made." 373 U.S. at 190, 83 S.Ct. at 1156.

should consider such evidence along with all the other evidence in the case.

"Evidence that a defendant's reputation for truth and veracity, or honesty and integrity, or as a law-abiding citizen, has not been discussed; or that those traits of the defendant's character have not been questioned, may be sufficient to warrant an inference of good reputation as to those traits of character.

"Evidence of a defendant's reputation, inconsistent with those traits of character ordinarily involved in the commission of the crime charged may give rise to a reasonable doubt, since the jury may think it improbable that a person of good character in respect to those traits would commit such a crime.

"The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." [15]

### III.

In conclusion, we hold that the district court properly refused the defendant's proposed point for charge as stated but that, on this record, the district court's failure to give any instructions or guidance to the jury for consideration of the character evidence adduced at trial constituted plain error. Accordingly, the judgment of conviction will be reversed and the matter remanded for a new trial.

GARTH, Circuit Judge, dissenting:

The majority is clearly correct to the extent that it would require a proper charge on character evidence to be given where a correct charge is requested. Our cases surely require no less than this of the trial court. Neither, though, do the cases require more than this.

My disagreement with the majority is that it has extrapolated from various cases a proposition for which they do not stand. The majority holds that when an improper request for charge on character evidence is made and properly denied, the court has a duty, under penalty of constituting plain error, to formulate and deliver a proper charge. I do not read the cases, nor indeed the briefs filed on this appeal,[1] to require this result, and I therefore dissent.

1.

In *United States v. Frischling,* 160 F.2d 370 (3d Cir.1947), this court held that when "specifically requested to do so," a trial judge must charge the jury that they must consider character evidence with the other evidence, and that character evidence, like other evidence, may generate a reasonable doubt justifying acquittal. *Id.* at 370–71. We recognized in that case that while the jury should consider character evidence in the same manner as it would consider other evidence, the nature of such evidence creates the possibility that the jury will deem it irrelevant. Thus, the jury must be specially alerted to the weight character evidence may be given in their deliberations. *Id.* at 371.

This court affirmed the *Frischling* principle in *United States v. Klass,* 166 F.2d 373 (3d Cir.1948), in holding that any charge on character evidence must convey the idea

15. A similar charge has been recommended by the United States Fifth Circuit District Judges Association, *Pattern Jury Instructions, Criminal Cases,* 37 (1979).

1. The appellant Graner at no time suggested that the failure of the district court judge to charge on the issue of character evidence constituted plain error. As the majority notes (maj. op. p. 91), "By failing to object specifically to the omission in the charge, the defendant did not preserve the issue for appeal unless the district court's action constituted plain error or affected substantial rights."

The record is clear that Graner did not preserve for appeal the issue of a character evidence charge. Indeed, Graner's brief does not even intimate that plain error would permit our review of the district court's failure to instruct on character evidence. As a consequence, the Government does not address this issue either. Accordingly, the ground on which the majority's decision rests and the ground on which it reverses the district court is a ground never urged by Graner and never briefed by the parties, and, insofar as our independent research reveals is a holding that has never been reached by any court.

that the jury is to consider such evidence with all other evidence, and may infer a reasonable doubt from it even though the other evidence is convincing. *Id.* at 380.

Neither *Frischling* nor *Klass* may be read to require that a proper character evidence charge be given in the absence of an adequate request for one. The majority relies for such a proposition on this court's holding in *United States v. Quick,* 128 F.2d 832 (3d Cir.1942). In *Quick,* this court noted that a judge "need not charge in the exact language of a request," and indeed "is not required, of his own motion, to charge with respect to character evidence," but that "a request to that end is the legally appropriate and efficient means for inducing pertinent instructions by the court." *Id.* at 835. Thus, Quick's request for a charge created a duty to instruct the jury on the nature and manner of consideration of character evidence and the weight to be given it. *Id.*

The requested charge in *Quick* conformed closely to the principle enunciated six years later in *Klass, supra.* The requested charge read

> [i]t is the right of a person charged with crime to have all relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal.

*Id.* Thus, the request for a character evidence charge in *Quick* stated properly the legal import of character evidence. That the judge need not charge "in the exact language of a request" does not, in the context of this case, mean that the judge *must* give a proper charge in the absence of a request for one. At most, *Quick* stands for the proposition that a request for charge that correctly enunciates the principles upon which the jury should consider character evidence imposes a duty upon the trial court to instruct on those principles. *Klass* and *Frischling* then refined and articulated these principles. Thus, it cannot be said that these cases impose a duty upon

the trial court to give a proper charge in the absence of a request that correctly enunciates the appropriate legal principles.

2.

Graner's attorney did not object to the charge at trial. *See* F.R.Crim.P. 30. Failure to preserve objections to the jury charge will not prevent review on appeal where the charge constituted plain error. *United States v. Palmeri,* 630 F.2d 192 (3d Cir.1980); *United States v. Grasso,* 437 F.2d 317 (3d Cir.1970); *see* F.R.Crim.P. 30, 52(b). The majority, however, holds it "plain error" for a court to fail to formulate a correct charge on character evidence when a defendant merely suggests that a character charge of some sort be given. (Maj. op. at 92.) A defendant, under the majority's holding, need neither formulate a proper request nor object to the judge's failure to charge, in order to obtain appellate review. The duty thus placed on the district court to formulate a character evidence charge when a charge is "in the air," is an inordinate requirement, one that does not rise to the level of importance we normally reserve for "plain error." Error is plain only if review on appeal is necessary to prevent a manifest miscarriage of justice. *Palmeri, supra,* 630 F.2d at 201; *Grasso, supra,* 427 F.2d at 319. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

Character evidence is to be considered and weighed like all other evidence. The charge given did treat character evidence like other evidence in that it did not mention character evidence specifically. (Maj. op. at 91–92.) The jury was not told that character evidence was deserving of *less* emphasis than other evidence. Moreover, there was compelling evidence for conviction presented by the testimony of Logan. Were the instruction erroneous—for example—in setting out incorrect elements of the offense charged, or of proof necessary to convict, I might have less trouble finding it to be plain error. What this case presents,

however, is an error—if error it is—of an order of far lesser magnitude. It goes to the degree to which the jury must be expressly dissuaded from its hypothetical tendency to deemphasize certain evidence in its deliberations.

I cannot conclude that the failure to instruct on character evidence amounts to plain error. Indeed, all the authorities discussing this very issue hold otherwise.[2] *See generally United States v. Clavey*, 565 F.2d 111, 118 (7th Cir.1977) (unobjected-to failure to instruct on character evidence not reviewable), *cert. denied*, 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978); *Swingle v. United States*, 389 F.2d 220, 222 (10th Cir. 1968) (failure to give proper character evidence charge not "fundamental error").

I do not believe that in circumstances such as are presented here we should erode the plain error rule. We ought not to require district court judges, at the peril of having otherwise-unassailable convictions set aside, to anticipate and to formulate correct instructions for counsel. Indeed, I suspect that the majority itself is fearful of diluting the "plain error" rule for it seeks to restrict its holding to "a narrow exception to the usual practice." Maj. op. at 92.

The majority endeavors to limit "plain error" to those instances where the defendant (1) gives "notice" to the judge by requesting an incorrect charge on character evidence, and (2) where the case turns on issues of credibility. *Id.* First, as I have attempted to point out in this dissent, neither this court nor any other court has ever

imposed a duty on the district court to formulate a charge that correctly enunciates appropriate legal principles where, in the first instance, the defendant has requested a wholly improper charge. Moreover, we have never required such action from the district court when the defendant has stood by his initial incorrect request, failing thereafter to frame a correct instruction and failing to object when the court properly declines to instruct the jury in accordance with the defendant's incorrect request.

Second, I fear that the second limiting factor in the majority's standard, provides no limit at all: rarely, if ever, is the defendant's credibility *not* at issue in a criminal trial. The mere plea of "not guilty" which triggers a trial in a criminal cause, ensures that credibility issues abound.

Thus, as I understand the majority opinion, this court for the first time will now be holding that even though an incorrect character evidence charge was requested by the defendant and no corrective charge was substituted when the original charge was properly refused, the district court nevertheless, at its peril, is now required to frame its own instruction. If it does not do so, we will review the charge on the basis of "plain error." I suggest that this is a remarkable departure from traditional "plain error" jurisprudence, and constitutes the very type of "extravagant protection" condemned by the Supreme Court. *Namet v. United States*, 373 U.S. 179, 190, 83 S.Ct. 1151, 1156, 10 L.Ed.2d 278 (1962).[3] I cannot

---

2. *Darland v. United States*, 626 F.2d 1235 (5th Cir.1980), cited in the majority opinion, maj. op. p. 91–92, is not to the contrary. In *Darland*, the character evidence produced by the defendant was in the form of an affidavit to which the Government did not object. After the affidavit had been read to the jury, the district court, upon learning that the defendant himself would not testify, sua sponte struck the affidavit and instructed the jury to disregard the character evidence. Having no character evidence in the record, the district court then refused to give a proper jury instruction on character evidence requested by the defendant. The Fifth Circuit reversed, but its reversal was predicated wholly upon the error in striking the relevant character evidence without cause, particularly

where the character evidence offered affected a trait relevant to the crime charged.

*Darland* is thus not authority for a situation such as the one presented here: where character evidence is properly admitted, the requested instruction is incorrect, and no objection is made to the failure of the district court to charge.

3. The majority's "notice" rule would appear to lead to the anomalous conclusion that a defendant who does not even submit a charge, or who refuses to submit requests to charge, could put the court on "notice" that he desired instructions in a number of different areas—character evidence, expert testimony, interested witness, absence of witnesses, number of witnesses, ac-

agree that the law of this Circuit mandates, such an extension of the "plain error" rule.

Accordingly, contrary to the majority's conclusion, I would affirm the district court and I respectfully dissent from the majority's holding.

complice testimony, inconsistent statements, credibility of witnesses, etc.—then leave it to the trial judge to frame the correct instruction, and then, further, have the charge reviewed under plain error even in the absence of an objection to the court's charge if it is not given, or to its content if it is ultimately given.