919 F.2d 734
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas DENNIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond E. JOHNSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcus Antonio HUGHES, Defendant-Appellant.
 Nos. 89-5654, 89-5657 and 89-5667.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1990.
Decided Dec. 7, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-89-74)
 John Kenneth Zwerling, William Benjamin Moffitt, William B. Moffitt & Associates, Alexandria, Va. (Argued), for appellants; Michael S. Lieberman, Lisa B. Kemler, William B. Moffitt & Associates, Alexandria, Va., on brief. Bernard James Apperson, III, Assistant United States Attorney, Alexandria, Va. (Argued), for appellee; Henry E. Hudson, United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, Circuit Judge, JAMES B. McMILLAN, Senior District Judge for the Western District of North Carolina, sitting by designation, and JOSEPH H. YOUNG, Senior District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Defendants Thomas Dennis, Raymond Johnson, and Marcus Hughes appeal their convictions and sentences for distributing and conspiring to distribute crack cocaine, raising several sources of error, some of which are shared by all defendants, and some of which are unique to each defendant. Finding none of the contentions persuasive, we affirm.
 
 I.
 
 2
 The government's evidence at trial established the following: FBI Special Agent Eric Bryant was working undercover in conjunction with seven other surveillance agents on February 8, 1989. After setting up an initial meeting with Paul Morin for the purchase of crack, Agent Bryant met with Morin in the Sovran Bank parking lot in Alexandria, Virginia. Morin arrived with two other men, one of whom was later identified as Dennis. Morin told Agent Bryant that he did not have the crack to distribute and asked Bryant to accompany Dennis and him to retrieve the drugs. Fearing a rip off, Bryant refused and said he would wait until Morin returned with the crack. When Bryant would not leave the site, Morin asked Dennis to use his telephone beeper to reach Morin's cousin, who had the crack. After going to a nearby 7-11 store to "beep" the cousin, Morin and Dennis (still under FBI surveillance) returned to Bryant and told him that they would have to go to Crystal City to pick up the crack.
 
 
 3
 Once in Crystal City (and still under surveillance), Morin and Dennis called two numbers and, shortly thereafter, codefendants Raymond Johnson and Marcus Hughes arrived in a white Toyota Supra. Morin and Dennis returned to the Sovran parking lot followed by the white Toyota.[1] Morin then walked over to Bryant's car and gave him a bag containing about four to five ounces of crack. As Bryant got out to pay Morin, agents arrested Morin. Dennis, in the Morin vehicle, and Hughes and Johnson in the Toyota, fled the scene, and were later arrested by surveillance agents.
 
 
 4
 On February 28, 1989, Dennis, Hughes, and Johnson were indicted on charges of conspiring to distribute crack in violation of 21 U.S.C. Sec. 846, distributing crack in violation of 21 U.S.C. Sec. 841(a)(1), and aiding and abetting the distribution of crack in violation of 21 U.S.C. Sec. 2. A month before trial, defendant Hughes (with the other defendants) filed motions for exculpatory evidence, a motion for Jencks material, a motion to dismiss the indictment, and a motion to suppress the warrantless arrests. After a hearing, the district court granted only the motions for exculpatory evidence and Jencks material. Judge Hilton held a separate suppression hearing on April 20, 1989, and denied that motion.
 
 
 5
 At the joint trial the government introduced the testimony of Agent Bryant, the video and audio recordings of Dennis, and the testimony of the several surveillance agents. In addition, the government introduced the testimony of Paul Morin, who had pled guilty to distribution, to show that the source of the crack was Johnson and Hughes and that Dennis received the crack from them before handing it over to Agent Bryant. Further, the government demonstrated that Johnson's beeper retained Dennis' phone number in memory and that the Toyota was registered to Hughes.
 
 
 6
 The appellants' defense at trial consisted of admitting their presence at the crime scene but denying involvement in the criminal activity. The only defendant to call a witness was Dennis, who presented one character witness. Prior to closing arguments, Dennis requested that the trial judge give the standard federal jury instruction on character evidence. Noting that "the jury has been fully instructed on the credibility of the witnesses and the weighing of testimony," the Court refused to give the proffered instruction. The jury convicted all defendants on all charges.
 
 
 7
 Prior to the sentencing hearing, counsel for Dennis filed a motion disputing the contents of the presentence report. At the sentencing hearing, where Dennis' counsel again challenged the merits of the report, the defendants filed motions to dismiss the conviction and depart from the sentencing guidelines. The defendants proffered a chemist, Dr. Jay Siegel, to testify regarding the chemical properties of crack cocaine, but the trial judge denied the motions and the proffered testimony. Dennis and Hughes were sentenced to 120 months and Johnson to 135 months.
 
 II.
 
 8
 On appeal, defendant Dennis argues that the trial judge erred by refusing his proffered instruction on character evidence, and by not determining whether Dennis personally had reviewed the presentence report. Defendants Johnson and Hughes argue that the district court erred in denying the motions to suppress because their arrests were not supported by probable cause. Finally, all the defendants maintain that the failure of the government to furnish various discovery items violated Brady v. Maryland, 373 U.S. 83 (1963), thus requiring a new suppression hearing, and that the penalties for offenses involving crack cocaine base are unconstitutionally arbitrary. We address these claims seriatim.
 
 A. Defendant Dennis: Character Instruction
 
 9
 Given that the trial judge allowed Dennis to offer evidence of his law-abiding nature, the only issue we must address is whether the court's refusal to issue a corresponding character instruction requires reversal. The proffered instruction, taken from a federal pattern jury instruction book,[2] stated:
 
 
 10
 You have heard testimony that the defendant, ______, (has a good reputation for [e.g., honesty] in the community where he lives and works) (in his opinion, is an [honest] person). Along with all the other evidence you have heard, you may take into consideration what you believe about the defendant's [honesty] when you decide whether the government has proved, beyond a reasonable doubt, that the defendant committed the crime.
 
 
 11
 Almost one hundred years have passed since the Supreme Court, in Edgington v. United States, 164 U.S. 361, 366 (1896), ruled that a jury should be instructed that character evidence, when considered in connection with other evidence, may generate a reasonable doubt. Since that time, numerous courts, including the Supreme Court, have commented on the importance of giving jurors adequate guidance in considering character evidence. In Michaelson v. United States, 335 U.S. 469 (1948), the Court, in dicta, went so far as to state that character evidence standing alone "may be enough to raise a reasonable doubt of guilt and ... a jury in a proper case should be so instructed." 335 U.S. at 476 (citing Edgington ). Although almost every circuit, including the Fourth, has rejected the Michaelson suggestion of giving a special "stand alone" instruction on character evidence, see Mannix v. United States, 140 F.2d 250, 253-54 (4th Cir.1944), these courts, without exception, have emphasized that some instruction on character evidence should be given.[3] See United States v. Burke, 781 F.2d 1234, 1241 (7th Cir.1985) (courts must "tell jurors the importance of character evidence in light of the contentions of the parties in the case at hand"); United States v. Winter, 663 F.2d 1120, 1148 (1st Cir.1981) (instruction explaining what character evidence is and how it may be used was adequate to survive challenge, but that or a similar instruction must be given); Mannix, 140 F.2d at 254 ("trial judge 'should have instructed the jury in substance that reputation of the defendant's good character, when put in evidence, is a fact which [the jury] should consider with the other facts in the case....' ") (quoting United States v. Quick, 128 F.2d 832, 836 (3d Cir.1942) (quoting Cohen v. United States, 282 F.2d 871, 873 (3d Cir.1922))). Indeed, several courts have reversed convictions where the district court refused to give a jury instruction on character. See United States v. Logan, 717 F.2d 84, 88 (3d Cir.1983) (failure to instruct on character evidence is plain error); United States v. Darland, 626 F.2d 1235, 1237 (5th Cir.1980) (failure to admit character evidence and charge the jury regarding such evidence constitutes plain error requiring reversal); United States v. Frischling, 160 F.2d 370, 371 (3d Cir.1947) (when jury is left out in the dark on character evidence, it "might well regard evidence of such reputation as wholly irrelevant to the specific issue of guilt committed to them and consequently give it no consideration whatsoever"). Cf. United States v. Foley, 598 F.2d 1323, 1336 (4th Cir.1979) (approving instruction which declared that proof of good character may, in combination with other evidence, create reasonable doubt).
 
 
 12
 In light of these cases, we hold that it was error to refuse any type of character evidence instruction, especially since the government did not object to the defendant's proposed instruction. Cf. United States v. Steele, 685 F.2d 793, 810 (3d Cir.1982) ("a District Court should be extremely cautious in rejecting a defendant's proposed instructions in the absence of a specific objection from the government...."). If the government's case had turned entirely on the testimony of co-conspirator Morin, or if the character evidence offered related directly to a trait relevant to the offense charged, the error might require reversal. In Logan, cited above, the Third Circuit held that it was plain error to refuse to give an instruction on character evidence where the only evidence offered against the defendant was that of his accomplice; the court held that because the government's case turned on the in-court credibility of the defendant, ignoring the character evidence substantially prejudiced the defendant. 717 F.2d at 88.[4] See also United States v. Previte, 648 F.2d 73, 83 (1st Cir.1981) (failing to charge jury on character evidence was not plain error where character evidence was not vital to theory of the defense).
 
 
 13
 However, contrary to the assertions of the appellant, the government's case here did not turn solely on the credibility of Dennis. Rather, the government's case was bolstered by the incriminating statements of Dennis on audio tape while he was in direct negotiation with Agent Bryant, and by the testimony of the case agents who mentioned Dennis' movements in getting the cocaine to the Sovran Bank parking lot. Thus, it is fairly clear that Dennis would have been convicted even if Morin had never taken the stand. Accordingly, the failure to give the requested instruction, although erroneous, is not so basic to a fair trial as to warrant a reversal. See Fed.R.Crim.P. 52(a) ("[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); Rose v. Clark, 478 U.S. 570, 579 (1985).[5]
 
 
 14
 B. Defendant Dennis: Review of Presentence Report
 
 
 15
 Dennis next argues that by not determining whether he had reviewed the presentence report, the trial judge violated Fed.R.Crim.P. 32(a)(1)(A) and that a remand for resentencing is required. Rule 32(a)(1)(A) provides that "[b]efore imposing sentence, the court shall ... determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report...." In a statutory provision which became effective in November 1987, Congress provided that district courts "shall assure that a report filed pursuant to this section is disclosed to the defendant, the counsel for defendant, and the attorney for the Government at least ten days prior to sentencing...." 18 U.S.C. Sec. 3552(d) (1987).
 
 
 16
 We recently addressed Rule 32 in United States v. Miller, 849 F.2d 896 (4th Cir.1988). There, the defendant requested, as Dennis does here, resentencing because the district court failed to determine whether he had seen and discussed the presentence report with counsel. Writing for a unanimous panel, Chief Judge Winter agreed, concluding that the district court "did not expressly inquire as to whether [the defendant] had discussed the report with counsel, and there is no evidence in the record from which one could reasonably infer that such a discussion took place." 849 F.2d at 897. Chief Judge Winter further declared:
 
 
 17
 we think that a bright-line approach is mandated by the clear language of Rule 32. The district court must, without exception, determine that a defendant has had the opportunity to read and discuss the presentence investigation report with his counsel....
 
 
 18
 This is not to say that the district court must always expressly ask whether the report has been read and discussed. We recognize that often a statement by counsel or defendant will unequivocally demonstrate that the report has been read and discussed by them, or court records may allow the district court to infer that defendant and defense counsel signed out the report and discussed it together. See United States v. Mays, 798 F.2d 78, 80 (3 Cir.1986) ("the court need only somehow determine that the defendant has had this opportunity").
 
 
 19
 849 F.2d at 897-98 (emphasis added). In a concluding footnote, which cited the 1987 provision, the court noted that "in the future sentencing courts will be required to take affirmative steps to ensure that the defendant had ample opportunity to review the report." Id. at 898 n. 1.
 
 
 20
 Dennis contends that since the district court did not take steps to assure that he had seen the presentence report, Miller requires a resentencing. The government, on the other hand, contends that a remand is inappropriate because Dennis' counsel filed a motion in response to the presentence report, and also pointed out the errors of the presentence report at the sentencing hearing.[6] The filing of these papers and the comments at the hearing, the government argues, indicate that both Dennis and his lawyer saw the presentence report, and the trial judge could easily "infer" compliance with Rule 32.
 
 
 21
 We agree with the government that the record supports the inference that Dennis saw and considered the presentence report. Miller does not require the district court to expressly inquire whether the defendant read the presentence report, and there is little question, as Dennis admits in his brief, that Dennis' counsel read the presentence report; trial counsel acknowledged having read the report during counsel's allocution and in the motion he filed on behalf of Dennis. At the allocution, trial counsel recounted circumstances supporting his objections that could only have come from the defendant. Thus, we infer compliance with Miller and Rule 32 and so decline to remand for resentencing.
 
 
 22
 C. Defendants Johnson & Hughes: Probable Cause To Arrest
 
 
 23
 Turning to defendants Johnson and Hughes, we next address whether their arrests were unsupported by probable cause and therefore unlawful. They maintain that the trial judge erred in finding to the contrary at the suppression hearing. However, a ruling on probable cause may not be disturbed unless clearly erroneous, see United States v. Knox, 888 F.2d 585, 587 (8th Cir.1989), and the defendants have not shown clear error.
 
 
 24
 The existence of exigent circumstances, such as the possibility that a suspect may flee or destroy evidence, may permit law enforcement officials to make a warrantless arrest. Payton v. New York, 445 U.S. 573 (1980). The existence of probable cause to make a warrantless arrest depends upon "whether, at the moment the arrest was made, ... the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). In reviewing the officers' conduct, we look to the totality of the circumstances and not just one discrete occurrence. Illinois v. Gates, 462 U.S. 213, 233-39 (1983).
 
 
 25
 Appellants contend that the mere fact of Johnson and Hughes' presence near illicit activity does not, by itself, support probable cause. Rather, the defendants argue, the evidence at the suppression hearing established only that the white Toyota followed Morin to the sale site, and that Morin walked over to the Toyota; the defendants point out that no agent ever saw Johnson or Hughes handle the cocaine. Moreover, the defendants contend that Agent Bryant had reason to suspect another party of supplying the cocaine, because earlier that day, while observing Morin, Bryant saw a man in a pickup truck visit Morin.
 
 
 26
 If the determination of probable cause was limited to the actions of Johnson and Hughes in entering the parking lot behind Morin and Dennis, the trial judge's determination might be problematic. Cf. Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("mere propinquity" to others suspected of criminal activity does not, without more, give rise to probable cause). In United States v. Everroad, 704 F.2d 403 (8th Cir.1983), relied upon by defendants, the court concluded that "physical proximity to a crime combined simply with a brief association with a suspected criminal--when there is no other unlawful or suspicious conduct by any other party involved--cannot support a finding of probable cause." 704 F.2d at 407 (emphasis added). Unlike the Everroad case, where the defendant was seen accompanying a drug dealer prior to a scheduled sale, Johnson and Hughes, observed not just in the Sovran Bank parking lot, were constantly monitored by FBI surveillance, received a beeper call from Morin, met him and Dennis, and then drove back to the bank to meet with Agent Bryant. Johnson and Hughes followed Morin the entire way from Crystal City to Alexandria. Further, despite the mysterious person who visited Morin earlier in the day, Morin and Dennis did not have the crack when they met Agent Bryant the first time. It was only after calling Johnson and Hughes that Morin produced the crack upon return to the parking lot; in the interim, Morin and Dennis met with no one else.
 
 
 27
 These facts indicate that Johnson and Hughes were observed at the Sovran Bank parking lot, where the transaction took place, in Crystal City where Morin and Dennis were observed receiving the drugs, and they were tied into the transaction by vehicle registration and telephone contacts. Accordingly, it was reasonable for a "prudent" law enforcement officer to believe that the defendants had just committed a crime. We thus affirm the denial of the motion to suppress the warrantless arrests.
 
 
 28
 D. All Defendants: Failure To Provide Discovery
 
 
 29
 Prior to trial, the defendants filed a motion for Jencks material under 18 U.S.C. Sec. 3500(c) and for similarly relevant exculpatory material prior to the suppression hearing under Fed.R.Crim.P. 12(i). The trial judge granted these motions and the government produced a series of documents, which did not include the surveillance log and the tape-recorded conversations between Agent Bryant and Morin. On the day trial was supposed to begin, the trial judge ordered production of the log and accompanying tapes and ordered a two-week continuance. The defendants contend that because these taped conversations contained exculpatory material, the failure to disclose them prior to the suppression hearing violates Brady v. Maryland, 373 U.S. 83 (1963), and requires a remand for a new suppression hearing.
 
 
 30
 There are two problems with this argument. First, the appellants never requested the surveillance log when they sought production of exculpatory evidence.[7] Second, and more importantly, it cannot be said that the log and accompanying tapes constitute the type of exculpatory material contemplated by Brady. To the contrary, the tapes, as played at trial, corroborate Agent Bryant's testimony and would not have helped the defendants at the suppression hearing. Thus, the defendants fall far short of the required showing that the result of the suppression hearing would have been different had the log and tapes been disclosed earlier. See United States v. Bagley, 473 U.S. 667, 678 (1985).
 
 
 31
 E. All Defendants: Heightened Penalties For Crack
 
 
 32
 The defendants' final argument, that the heightened penalties for crack and cocaine base offenses under 21 U.S.C. Sec. 841(a)-(b) are irrational and arbitrary, is controlled by our recent decision in United States v. Pinto, 905 F.2d 47 (4th Cir.1990). There, as here, the defendants argued that Sec. 841 is fatally ambiguous because it fails to provide defendants with fair notice that they were subject to enhanced punishment for crack cocaine. Relying on the other circuits that faced similar arguments and rejected them out of hand,[8] we rejected the vagueness due process challenge to the statute. We also view Pinto as foreclosing the defendants' argument regarding the enhanced penalties of Sec. 841 and the Eighth Amendment's prohibition against cruel and unusual punishment.
 
 IV.
 
 33
 Accordingly, we affirm the convictions and sentences of Dennis, Johnson, and Hughes.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 FBI surveillance reported that the Toyota tailed Morin and Dennis the entire way back to Alexandria
 
 
 [2]
 See Devitt & Blackmar, Federal Jury Practice and Instructions Sec. 15:25 (3d ed. 1977 & Supp.1987)
 
 
 [3]
 Both the Federal Judicial Center and Judge Sand's guide to federal jury instructions also recommend that the jury be instructed specifically on character evidence. See Federal Judicial Center, Pattern Criminal Jury Instructions No. 51, at 63 (1987); Sand, Siffert, Loughlin, & Reiss, Modern Federal Jury Instructions p 5.06, Nos. 5-14 & 5-15 (Matthew Bender 1989); see also Manual of Model Criminal Jury Instructions for the Ninth Circuit No. 4.05 (1989)
 
 
 [4]
 The Logan court concluded with a recommendation that district courts give the charge on character evidence suggested in Devitt & Blackmar, Federal Jury Practice and Instructions Sec. 15:25 (3d ed. 1977), the same instruction proffered by Dennis in this case. See Logan, 717 F.2d at 92
 
 
 [5]
 The defendant's reply argument that it is reversible error to fail to instruct on the defense's "theory" of the case is misplaced. A defendant's "theory" of defense, such as an alibi, differs markedly from character evidence, which here was used only to show that the defendant had law-abiding tendencies
 
 
 [6]
 This motion, entitled "Position of Defendant Thomas Dennis With Respect to Sentencing Factors," is not included in the joint appendix
 
 
 [7]
 The defendants argue that because they requested all Jencks material before the hearing, it is incorrect to suggest that they never requested the log and accompanying tapes. However, these items were not Jencks material as to Agent Bryant, the only witness to testify at the suppression hearing
 
 
 [8]
 See, e.g., United States v. Cyrus, 890 F.2d 1245, 1248 (D.C.Cir.1989) (Congress had "readily apparent" reasons for enhanced penalties for crack); United States v. Pineda, 847 F.2d 64, 65 (2d Cir.1988) (per curiam) ("[t]he mandatory minimum sentence provisions [of 21 U.S.C. Sec. 841(b) ] are based on a 'clear, unequivocal and rational purpose,' ... and hence Sec. 841(b)(1) does not violate appellant's right to equal protection")