

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2006

# Alexander v. Shannon

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1651

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Alexander v. Shannon" (2006). *2006 Decisions.* Paper 1715.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1715

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL
*AMENDED

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 05-1651
_____

RAYMOND ALEXANDER,

Appellant

v.

ROBERT SHANNON, SUPERINTENDENT; THE DISTRICT ATTORNEY OF THE
COUNTY OF BUCKS; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 03-cv-03514)
District Judge: Honorable Stewart Dalzell

_____

*Argued  November 15, 2005

Before: ROTH, FUENTES, AND BECKER, Circuit Judges.

(Filed: January 24, 2006)

Jules Epstein, Esq. (Argued)
Kairys, Rudovsky Epstein & Messing
924 Cherry Street
Suite 500
Philadelphia, PA 19107
        *Counsel for Appellant*

Stephen B. Harris, Esq. (Argued)
T. Gary Gambardella, Esq.
Office of the District Attorney
55 East Court Street
Bucks County Courthouse
Doylestown, PA 18901
        *Counsel for Appellees*

_____

OPINION

_____

BECKER, <u>Circuit Judge</u>.

Raymond Alexander appeals from an order of the United States District Court for the Eastern District of Pennsylvania denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We will affirm.

As we write essentially for the parties, we need not describe the facts of this case in detail. Briefly, Alexander was convicted by a jury in Bucks County, Pennsylvania of statutory sexual assault, involuntary deviate sexual intercourse, and corrupting the morals of a minor. The offenses were related to his sexual encounters with a 15 year old girl, Carrie Williams. After Alexander's conviction was affirmed on direct appeal, he filed a petition for a writ of habeas corpus pursuant to § 2254. The District Court denied the habeas petition, but issued a certificate of appealability ("COA") on Alexander's claim that he was denied due process by the prosecutor's statement in closing that the defense "would like you to victimize [Williams] again." The District Court denied a COA on

Alexander's remaining claims, namely, that the prosecutor presented false testimony, that the trial court improperly excluded certain exculpatory evidence, that his trial attorney provided ineffective assistance, and that the alleged errors, when combined, denied him a fundamentally fair trial. Alexander timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. As to the issue on which the District Court granted a COA, this Court exercises plenary review because the District Court relied exclusively on the state court record and did not hold an evidentiary hearing. See Jacobs v. Horn, 395 F.3d 92, 99 (3d Cir. 2005). A federal court may grant relief to a habeas petitioner "with respect to any claim that was adjudicated on the merits in State court proceedings," only if the state's adjudication of the claim was either "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Alexander argues that the prosecutor's comments in his closing to the jury violated his due process right to a fair trial. During closing argument, the following exchange took place:

> [Prosecutor]: We heard Mr. Schneider [defense counsel] go on and on about [Williams], and she's been dragged through the mud, she's been victimized by this man under the facts of this case, and they would like you to victimize her again.
>
> Mr. Schneider: Objected to.

3

The Court: It's argument.

The Pennsylvania Superior Court concluded that Alexander failed to demonstrate that the prosecutor's remarks had the "unavoidable effect of, [sic] forming in the jury's mind a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." In particular, the Superior Court concluded that the prosecutor's statements did not necessarily liken an acquittal to the re-victimization of Williams because the comments were subject to more than one interpretation.

Alexander argues that this analysis was an unreasonable application of clearly established federal law explicated in Moore v. Morton, 255 F.3d 95, 108 (3d Cir. 2001), a habeas case involving prosecutorial misconduct in a rape trial.[1] In Moore, this Court remanded with directions to grant a writ of habeas corpus, having found that, despite the trial court's curative instructions, the evidence was not strong enough to ensure that the jury disregarded the prosecutor's inflammatory and highly prejudicial remarks during closing argument. Id. at 120. Those remarks included the prosecutor's statement that "[t]he last thing I have to say is that if you don't believe [the victim] and you think she's

---

[1] "In determining whether a state decision is an unreasonable application of Supreme Court precedent, this court has taken the view that 'decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent.'" Fischetti v. Johnson, 384 F.3d 140, 149 (3d Cir. 2004) (quoting Marshall, 307 F.3d at 51).

lying, then you're probably perpetrating a worse assault on her."  Alexander argues that the "perpetrating a worse assault" statement is "virtually mirror[ed]" by the prosecutor's "victimize her again" comment in his case.

The District Court granted a COA on this issue, finding "Alexander's reliance on Moore . . . entirely legitimate" because "the words of both prosecutors – Alexander's and Moore's – do bear some resemblance."  The District Court ultimately concluded, however, that "close scrutiny reveals material differences."  We agree.

The Supreme Court has established that the inquiry on federal habeas review when analyzing a state prosecutor's comments to the jury is whether the comments "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process."  Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986).  To evaluate whether a defendant was denied due process, a court must examine the prosecutor's comments in the context of the trial as a whole.  See Greer, 483 U.S. at 766 (determining whether "remarks, in the context of the entire trial, were sufficiently prejudicial to violate respondent's due process rights") (citing Donnelly, 416 U.S. at 639).  We have explained that, under Supreme Court precedent, a "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Moore, 255 F.3d at 107.

5

Most importantly here, the evidence against Alexander is strong. See Darden, 477 U.S. at 182 (finding that habeas petitioner's trial was not fundamentally unfair because, inter alia, "[t]he weight of the evidence against petitioner was heavy"); Marshall v. Hendricks, 307 F.3d 36, 50 (3d Cir. 2002) (recognizing "that the stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair, whereas prosecutorial misconduct is more likely to violate due process when evidence is weaker.").

According to the state trial court, the "evidence at trial revealed, without contradiction," that Alexander, 52, and Williams, 15, engaged in consensual sexual activity: "Shortly after arriving at [Alexander's] house . . . [Alexander] and [Williams] proceeded to the bedroom where [Alexander] performed oral sex on [Williams]. The two later engaged in anal sex." In addition, Williams testified that Alexander "rubb[ed] her anus with his fingers," that she performed fellatio on Alexander, and that Alexander "put his penis inside of [her] vagina." This evidence provided the jury an ample basis upon which to find that Alexander was guilty of statutory sexual assault,[2] IDSI,[3] and corrupting

---

[2] Statutory sexual assault occurs when one (1) engages in "sexual intercourse" (2) with a complainant under sixteen (3) if the culprit is four or more years older than the complainant. See 18 Pa.C.S.A. § 3122.1. In addition to the "ordinary meaning" of the term, "sexual intercourse" "includes intercourse per os or per anus, with some penetration however slight; emission is not required." Id. at 3101.

[3] One commits involuntary deviate sexual intercourse when one (1) engages in "deviate sexual intercourse" with another person (2) under sixteen (3) if the culprit is four or more years older than the complainant and (4) they are unmarried. See 18 Pa.C.S.A. § 3123(a)(7). Deviate sexual intercourse includes "[s]exual intercourse per os or per anus

6

the morals of a minor.[4]  As a defense, Alexander argued that Williams deceived him about her age.  See 18 Pa.C.S.A. § 3102 (providing that "[w]hen criminality depends on the child's being below a critical age older than 14 years, it is a defense for the defendant to prove by a preponderance of the evidence that he or she reasonably believed the child to be above the critical age").  Although Williams admitted that she attempted to pass herself off as 18 years old, there was strong evidence suggesting that Alexander knew or suspected that Williams was under 16.[5]

In addition, the prosecutor's "victimize her again" comment is less severe than the "perpetrating a worse assault" remark found improper in Moore.  In Moore, the remark was directed to the credibility of the victim ("if you don't believe [the victim] and you

---

between human beings."  Id. at 3101.

[4] Corrupting the morals of a minor occurs when (1) one over eighteen (2) "by any act corrupts or tends to corrupt the morals" (3) of any minor under eighteen.  See 18 Pa.C.S.A. § 6301(a).

[5] For example, Williams apparently told Alexander that she was a high school student who lived at home with her parents, and Alexander repeatedly requested proof of Williams's age; Alexander demanded that Williams call him "Daddy" and he liked her to say she was a virgin; and Alexander usually referred to Williams as "baby" or "little girl." In addition, after their first sexual encounter in Alexander's home, Williams said she "didn't feel like he wanted me there; like he didn't want to be with me." Alexander replied, "Of course I want you here, baby.  I'm risking 25 years in jail to be with you." Furthermore, during a telephone conversation, Alexander pretended to be a principal and Williams played a student sent for discipline.  Finally, the jury could have inferred that Alexander feared that Williams was underage based on her testimony that he (1) stopped driving only twice during their trip from Kentucky to Pennsylvania, and that she did not get out of the car; (2) "seemed kind of nervous about [her] being" at the window of his home where she presumably could be seen by neighbors; and (3) vomited following one of their sexual encounters, and appeared "[n]ot too good, cold sweat, he looked sick."

7

think she's lying").  It also implied that an acquittal is tantamount to an offense more heinous than the brutal rape that Moore was charged with committing ( "then you're probably perpetrating a worse assault on her").  In this case, the prosecutor first properly focused the jurors' attention on the evidence, noting that Williams had "been victimized by this man under the facts of this case."  While the following phrase – "and they would like you to victimize her again" – clearly appealed to the jurors' emotions, it did so in the context of a case where the sex was factually, but not legally, consensual.  The suggested "vicitmiz[ation]," therefore, carried less emotional weight than the "perpetrat[ion]" threatened in Moore.[6]  Moreover, the remarks of the prosecutor in this case did not "implicate . . . specific rights of the accused such as the right to counsel or the right to remain silent."  Darden, 477 U.S. at 182; see also Donnelly, 416 U.S. at 643 (noting that the case was not one "in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination).

We recognize that no specific curative instructions were sought or provided.  See Donnelly, 416 U.S. at 643-44 (relying in part on trial court's specific curative instructions to deny habeas relief on claim related to prosecutor's comments); Darden, 477 U.S. at 182

---

[6] The Commonwealth attempts to minimize the severity of the prosecutor's comment by arguing that the reference to "victimiz[ation]" was directed at defense counsel's "callous disregard" for the victim during cross-examination, rather than at the actions of Alexander.  We find this argument unpersuasive.  Although the prosecutor's remarks do include an attack on defense counsel's treatment of Williams, the "victimize her again" comment, which immediately followed "she's been victimized by this man," was likely perceived by the jury to be directed at Alexander.

(same); Greer, 483 U.S. at 766 & n.8 (same). Nevertheless, we conclude that the strength of the evidence against Alexander supports the state court's conclusion – under a reasonable application of Supreme Court precedent – that Alexander's trial was not so infected with unfairness that it was constitutionally infirm.

With respect to Alexander's appeal from the District Court's denial of his remaining claims, the appeal may not proceed unless we first issue a COA. 28 U.S.C. § 2253(c)(1). A COA may issue only if Alexander has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Alexander must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

Alexander argues that the prosecutor committed misconduct when he presented and did not correct false evidence suggesting that Alexander had purposefully provided a false area code on a registration card at a hotel where he stayed when visiting Williams at her home in Kentucky. Apparently, Alexander's correct phone number began with a 215 area code. A police report, which was provided to Alexander's attorney in discovery, indicated that Alexander registered at the hotel using a 215 area code. However, when Williams's father was asked on direct examination by the prosecutor, "[t]he registration card at the hotel, did that have a 215 area code on it?," he replied, "[n]o, it did not." In his closing argument, the prosecutor referred to the testimony of Williams's father: "[Alexander] wanted her so bad that he put a fake or false area code on the registration at

the hotel so hopefully he couldn't be traced. Do you want to talk about deception? Look there, not to a 15 year old."

Even if it is assumed that Williams's father testified falsely and that the prosecutor knew of the perjury and acted improperly by not correcting it and by referring to it in closing, Alexander – for the reasons discussed above in relation to his "victimize her again" claim – has not met his burden of showing prejudice. Indeed, given the entirety of the evidence against Alexander, he has not shown "any reasonable likelihood" that the alleged error affected the jury's judgment. See United States v. Biberfeld, 957 F.2d 98, 105 (3d Cir. 1992).

Alexander also argues that his attorney was ineffective because he failed to impeach Williams's father with the contradictory police report or to raise any objection to the prosecutor's statement during closing argument that Alexander "put a fake or false area code on the registration at the hotel so hopefully he couldn't be traced." Trial counsel has an obligation to "investigate possible methods for impeaching a prosecution witness, and [the] failure to do so may constitute ineffective assistance of counsel." Tucker v. Ozmint, 350 F.3d 433, 444 (4th Cir. 2003). Here, the police report could have been used to impeach Williams's father. However, her father's recollection of the area code on the hotel registration card had little direct bearing on whether Alexander was guilty. Rather, it was used by the prosecution to rebut Alexander's mistake of age defense. However, because there was significant additional evidence that Alexander

10

knew Williams was underage, see footnote 5, *supra*, the failure to impeach Williams's father concerning the area code had little prejudicial effect. Cf. Felder v. Johnson, 180 F.3d 206, 213-14 (5th Cir. 1999) (finding no prejudice where the unimpeached witness's testimony was corroborated by physical evidence); see also Gonzalez-Soberal v. United States, 244 F.3d 273 (1st Cir. 2001) (noting that "a significant factor weighing in favor of finding prejudice is the absence of any corroborating evidence other than the testimony of [the unimpeached witnesses]").

A failure to object to prosecutorial misconduct can constitute ineffective assistance of counsel. See, e.g., Gravley v. Mills, 87 F.3d 779, 785-86 (6th Cir. 1996). For the reasons discussed above, Alexander has not established the requisite prejudice, and he thus cannot show that counsel was ineffective for failing to object to the prosecutor's closing arguments. See Mason v. Mitchell, 320 F.3d 604, 618 (6th Cir. 2003) ("any failure to object to prosecutorial misconduct did not constitute ineffective assistance of counsel because . . . we do not believe that the prosecutor acted improperly").

Alexander further alleges that he was denied his right to confront a witness and present a defense by the trial court's exclusion of evidence that Williams:

(1)     described herself as "slightly experienced" in her Internet advertisement;

(2)     had a relationship with another older man approximately one year before she posted the personal advertisement that Alexander responded to; and

(3)     received at least three responses to her advertisement and selected Alexander because he was willing to accept collect telephone calls from

11

Williams.[7]

Alexander sought to use this evidence in support of his mistake of age defense, to establish Williams's alleged bias, and to demonstrate that Williams conflated certain facts. The District Court determined that the exclusion of this evidence did not violate Alexander's constitutional rights. It reasoned that the "proffered evidence did not concern Williams's bias or motivation in testifying," and to the extent that it did, the exclusion "'fell within those 'reasonable limits' which a trial court, in due exercise of discretion, has authority to establish.'"

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Clause or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986). The right to present a complete defense encompasses a defendant's rights to rebut the state's evidence through cross-examination. See Webb v. Texas, 409 U.S. 95 (1972) (per curiam). However, the right to cross-examination is not absolute. See Ohio v. Roberts, 448 U.S. 56, 64 (1980). The accused's right to conduct cross-examination is always subject to the trial court's broad discretion to preclude repetitive and unduly harassing examination. Olden v. Kentucky, 488 U.S. 227, 231 (1988). Thus, "'trial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross examine a witness 'based on concerns

---

[7] The trial court prohibited the questioning of Williams concerning the first and third subjects during cross examination; the second subject was barred by a pre-trial ruling on Alexander's motion in limine.

12

about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

In determining whether the exclusion of evidence violates a defendant's confrontation rights, the Supreme Court has identified the following factors for a reviewing court to consider: the strength of the prosecution's overall case; the importance of the witness's testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and the extent of cross-examination otherwise permitted. See Van Arsdall, 475 U.S. at 684; see also U.S. v. Scheffer, 523 U.S. 303, 308 (1998) (exclusions of evidence are unconstitutional if they "significantly undermine fundamental elements of the accused's defense"). Evaluating these factors under the principles described above, we conclude that the limitations the trial court imposed fell within those "reasonable limits" which a trial court, in due exercise of its discretion, has authority to establish. See United States v. Chandler, 326 F.3d 210, 219 (3d Cir. 2003).

Williams's testimony was certainly crucial to the prosecution's case. However, the remaining factors support the District Court's conclusion that the exclusion of the evidence fell within reasonable limits. Significantly, Williams described at trial how she attempted to pass herself off as 18 in order to have a relationship with an older man, and

13

she testified that her relationship with Alexander was consensual. In light of this testimony, the advertisement's description, evidence of her prior relationship, and the fact that she selected Alexander from three responses to her Internet advertisement would have been cumulative and immaterial. In addition, the case against Alexander was strong. Finally, as the District Court noted, Alexander was permitted to "explore Williams's potential bias, her credibility, her intent to deceive, and even some of her sexual practices and predilections."[8]

Alexander next claims that his trial attorney provided ineffective assistance of counsel by failing to call available character witnesses. He attached to his habeas petition affidavits from those witnesses, each of whom stated that Alexander has a "reputation as a non-violent and law-abiding person." To establish constitutional ineffectiveness of counsel, Alexander must show that his counsel's performance was "outside the wide range of professionally competent assistance" and that the incompetent performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The standard for ineffective assistance of counsel under Strickland is highly deferential and there is a presumption that counsel's actions might be sound trial strategy. See Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999). However, "under Strickland, counsel's failure to assert a particular defense cannot be characterized as a 'strategy' unless counsel has

---

[8] To the extent that Alexander alleges that his attorney failed to adequately contest the exclusion of evidence, we conclude that such a claim is without merit because the evidence was properly excluded. See Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim").

14

investigated and consciously rejected" that defense. United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).

This Court has held that "opinion testimony which [a defendant] introduces into the trial constitutes substantive evidence which, under certain circumstances, can raise a reasonable doubt as to his guilt, even though it does not relate to the specific criminal act of which he is accused." United States v. Logan, 717 F.2d 84, 88 (3d Cir. 1983). Here, Alexander's attorney interviewed three potential character witnesses but decided not to call them to testify. We conclude that this strategy was sound. As the District Court explained, presenting these witnesses would have enabled the prosecution to ask about specific instances of noncriminal misconduct, and to inquire whether two of the witnesses knew that Alexander had been convicted in 1976 of risking a catastrophe.

Alexander also claims that his attorney was ineffective in failing to demonstrate that a sexually explicit "fantasy" story sent by Alexander to Williams, which appeared to describe an encounter between an older man and a younger woman, was in fact written by Alexander for his 32-year-old girlfriend one year before he first corresponded with Williams. The story, in which Alexander repeatedly calls his partner "little girl," was introduced by the prosecution as evidence that Alexander did not mistake Williams's age. According to Alexander, informing the jury of the story's true origins would have "removed a weapon from the prosecutor's arsenal to prove that [Alexander] was culpable and had no 'mistake of age' defense." However, the "when, for whom, and why" of the story are irrelevant. What matters is that Alexander sent a story to Williams in which the

15

male character refers to the female character as "little girl." For this reason, and because we agree that the sexually explicit story was "highly inflammatory," trial counsel's failure to present evidence concerning its origins was not objectively unreasonable.

Finally, Alexander contends that he is entitled to relief under a cumulative error analysis. Individual errors which do not alone create constitutional error can, when combined, have a cumulative effect which does rise to the level of constitutional error. See Kyles v. Whitley, 514 U.S. 419 (1995). Given the strength of the evidence against Alexander, we cannot say that the alleged errors, considered together, so infected the proceedings that they denied Alexander a fundamentally fair trial.

In sum, we will affirm the order of the District Court denying Alexander's petition for writ of habeas corpus because the adjudication of his prosecutorial misconduct claim based on the "victimize her again" comment did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. A COA will be denied as to Alexander's remaining claims because he has failed to make a substantial showing of the denial of a constitutional right.